THE PORT ROYAL RAILROAD COMPANY, plaintiff in error, *vs.* PAUL F. HAMMOND, defendant in error.

1. A court of chancery, in this state, has no jurisdiction to compel a domestic corporation to go into a foreign state and specifically execute a contract, by opening ditches on complainant's land, keeping the same open to a certain depth, constructing and keeping in repair cattle-guards thereon, and on its failure thus to perform, to enforce that decree by attachment and sequestration of its property in this state.

2. Where the same corporation was chartered in two states, whilst, for some purposes, it may be regarded as one entire entity, yet, not for the object above specified. Under the charter granted in this state, the corporation could only contract for the right of way over lands here, therefore the agreement sought to be enforced must have been made with the South Carolina corporation, and specific performance should be decreed by the courts of that state.

Equity. Specific Performance. Jurisdiction. Corporations. Contracts. Before Judge Gibson. Richmond Superior Court. April Term, 1876.

Reported in the decision.

FRANK H. MILLER, for plaintiff in error.

BARNES & CUMMING, for defendant.

WARNER, Chief Justice.

It appears from the abstract of the record in this case, that the Port Royal Railroad Company was incorporated by the state of South Carolina, December 21, 1857, and its charter points out the method of assessing damages for the right of way.

This South Carolina corporation was incorporated by act of the legislature of Georgia, December 19, 1859.

By act of September 22, 1868, the legislature of South Carolina passed a general law granting rights of way to railroads, section 7 of which act provides that whenever the same are abandoned, the soil reverts to the original owners.

On the 22d of May, 1872, Paul F. Hammond, for three thousand dollars, conveyed to the Port Royal Railroad Company, a strip of land two hundred feet wide, running the course as then surveyed, through the Cathwood plantation, a distance of one mile and a half. The deed was attested by H. R. Cook and T. T. Hammond, and recites as follows:

"Provided, always, and this deed is upon the express condition—

"1st. That the right of way is granted under the restrictions of the act of the General Assembly of South Carolina of September 22, 1868, and if abandoned reverts back to the party of the first part. (The land conveyed being in the state of South Carolina.)

"2d. That the system of drainage shall remain the same as

now, except that such ditches as have been filled up by the party of the second part, are to be re-opened by it, and the ditches to remain of such depth as to allow, as heretofore, the drainage of the land the depth of five feet.

"3d. That whenever the road crosses the line of any fence or other enclosure of the party of the first part, the party of the second part shall construct and keep in repair proper and sufficient cattle-guards or stock-gaps.

"And provided further, that whenever it may become necessary for the said railroad to occupy a space wider than the width of said strip of land, by reason of cuttings and fillings, it shall and may be lawful for them to occupy as much land outside the limits of the said strip as may be necessary to deposit waste earth and to construct embankments, and that the said company shall, at all times, have the right to cut down and remove any tree or trees which from the position or condition of it or them, may in any way endanger the track or property of the said company, notwithstanding the said tree or trees may be without the limits of the said strip of land."

To April term, 1874, Paul F. Hammond filed his bill in Richmond superior court, in this state, against the Port Royal Railroad Company, to enforce specific performance of the provisions of the said deed to the right of way, and to recover damages for not performing them.

On April 20th, 1874, the defendant filed its demurrer on the following grounds:

"1. There is no equity in the bill.

"2. Complainant has an adequate remedy at law.

"3. There is no allegation in the bill that such an action would lie under the laws of South Carolina."

At the hearing at April term, 1875, this demurrer was overruled.

On the trial of the case, the jury found a verdict in favor of the complainant for the sum of $3,000 damages up to the time of the filing of the complainant's bill, and that the de-

fendant, the Port Royal Railroad Company, be required to comply with its agreement, as set forth in the deed made by the complainant, within ninety days, under a penalty of five thousand dollars. The defendant made a motion for a new trial, on the ground that the court erred in overruling the demurrer, and on various other grounds therein set forth, which was overruled by the court—on condition that the complainant would write off from the verdict the penalty of five thousand dollars, the defendant paying the $3,000.00 damages assessed within thirty days. Whereupon the defendant excepted.

1. The defendant is a Georgia corporation, created by an act of the general assembly of this state, and its powers and duties are to be exercised and performed within the territorial limits of the state. As an artificial person, it has no extra-territorial existence—14 *Ga. Rep.*, 328. The object and prayer of the complainant's bill is, that the defendant may be decreed to specifically execute the contract, alleged to have been made with the defendant, for the right of way for its railroad through the lands of the complainant, situated and being in the state of South Carolina, and to recover damages for the injury already sustained from the non-performance of that contract. The complainant's equity is based upon his alleged right to have the defendant compelled, by a decree of the court of this state, to specifically perform the alleged contract in the state of South Carolina, by keeping the ditches open upon the complainant's land, situated in that state, to the depth of five feet, and to construct, and keep in proper repair, sufficient cattle-guards or stock-gaps, upon the complainant's land, in the state of South Carolina. There is no doubt that when a court of equity has jurisdiction of the person of a defendant, it may decree the specific performance of a contract for the conveyance of land situated in a foreign state or country, and also restrain a defendant by injunction in certain specified cases, by acting upon the *person* of the defendant within its jurisdiction; and that is the principle which the complainant

insists should be applied to the defendant in this case. Although a court of equity will act upon the person of a defendant within its jurisdiction, and compel the specific execution of a contract in relation to lands in a foreign state, on a proper case being made, still, we are not aware that the court has ever gone to the extent of compelling a defendant, by its decree, to go into a foreign state and specifically execute a contract _there_, even in the case of a natural person; and, more especially, when the defendant is an artificial person, having no legal existence beyond the territorial limits of the state which created it.

The court of equity of Richmond county, in this state, had no jurisdiction to compel the defendant, by its decree, to go into the state of South Carolina and specifically execute the alleged contract, as set forth in complainant's bill, by opening the ditches on complainant's land there, and keeping the same open to the depth of five feet, and by constructing and keeping in repair proper and sufficient cattle-guards, or stock-gaps thereon, and, upon its failure to do so, to enforce that decree by an attachment and sequestration of its property in this state.

If the acts required to be done on the part of the defendant, by the decree of the court, in the specific execution of the contract in question, were required to be performed in this state, there would not seem to be any well-founded objection to the jurisdiction of the court, notwithstanding the land, the subject matter of the contract, is situated in the state of South Carolina. This, however, is as far as the principle contended for has been recognized. See Wharton on Conflict of Laws, sections 288, 289, 290. But the specific execution of the contract, as prayed for in complainant's bill, can only be performed by going on the land in South Carolina and cutting ditches upon it there to the depth of five feet, and keeping them open so as to effect the stipulated drainage of the land, and by constructing and keeping in repair proper and sufficient stock-gaps thereon. To hold that the court has jurisdiction to grant the specific relief prayed for against the

defendant, would be to decide that a corporation, an artificial person, having no legal existence beyond the territorial limits of the state which created it, can be compelled to go into another state in which it has no legal existence, and there to cut and keep open ditches, construct and keep in repair stock-gaps on the complainant's land in that state, and, upon its failure to do so, that its property, in this state, may be attached and sequestrated to compel the performance of such specific acts by the defendant in a state and country where it has no legal existence to perform the same.

2. If it should be said that the incapacity of the courts of this state to enforce the decree prayed for *in rem*, by the defendant, in the state of South Carolina, where the land is situated, would constitute no objection to the right of the complainant to maintain his suit against the defendant in this state, and obtain a decree here for the specific performance of the alleged contract, the reply is, that by a fair interpretation of the act of 1859, incorporating the defendant in this state, no contract for the right of way for its road could have been made with it, except for its right of way over lands in this state, from the boundary line between the two states to the city of Augusta, and that being so, the contract for the right of way over the complainant's land in South Carolina, as alleged in his bill, must necessarily have been made with the South Carolina corporation, in which state the land is situated, and not with the Georgia corporation, in which latter state the land in question is not situated. Whilst it may be true that, for some purposes, the corporation may be treated as an entire corporation in both states, but not for the purpose of decreeing the specific performance of a contract made with the corporation of one state, in which the land is situated, against the corporation of the other state, with which the contract was not made—and in which the land is not situated. It would, therefore, seem to be much more equitable and just that the complainant should seek a specific execution of the alleged contract against the corporation with which it was made, and in the courts of

the state in which the land is situated, and obtain his decree in accordance with the laws of that state, and where the court will have jurisdiction to enforce it in conformity therewith. The specific execution of contracts by a court of equity must always rest in the sound discretion of the court. To compel the Georgia corporation, by a decree of the court, to specifically perform the alleged contract, made by the complainant with the South Carolina corporation, and to enforce its performance in the latter state by an attachment and sequestration of its property situated in Georgia, would be unfair, unjust, and against good conscience, inasmuch as its property in this state may not be more than sufficient to discharge its own contracts and liabilities to its creditors here.

In our judgment the court erred in overruling the defendant's demurrer to the complainant's bill.

Let the judgment of the court below be reversed.